SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
GREGORY F. HURLEY, Cal. Bar No. 126791 (Admitted *Pro Hac Vice*)
650 Town Center Drive 4th Floor
Costa Mesa, California 92626-1993
Telephone:  714.513.5100
Facsimile:  714.513.5130
ghurley@sheppardmullin.com

CADES SCHUTTE
A Limited Liability Law Partnership
THEODORE D. C. Young        5735-0
1000 Bishop Street, 12th Floor
Honolulu, Hawaii 96813
Telephone:  (808) 521-9200
Facsimile:  (808) 540-5072
tyoung@cades.com

COVINGTON & BURLING LLP
THOMAS S. WILLIAMSON, JR., D.C. Bar No. 217729 (Admitted *Pro Hac Vice*)
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone:  (202) 662-5438
Facsimile:  (202) 662-6291
twilliamson@cov.com

Attorneys for Defendant
NATIONAL FOOTBALL LEAGUE

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DEB RITCHIE,<br><br>    Plaintiff,<br><br> vs.<br><br>NATIONAL FOOTBALL LEAGUE, STATE OF HAWAI'I, DOE ENTITIES 1-10, DOE INDIVIDUALS 1-10,<br><br>    Defendants. | Civil No. 1:13-cv-00525 JMS-BMK<br><br>**DEFENDANT NATIONAL FOOTBALL LEAGUE'S MOTION FOR RECONSIDERATION OF ORDER DENYING REQUEST FOR DISCOVERY OF PLAINTIFF'S MEDICAL RECORDS; DECLARATION OF COUNSEL; EXHIBITS "A"-"I"; CERTIFICATE OF SERVICE**<br><br>Judge: Hon. J. Michael Seabright<br>Trial Date:   June 18, 2015<br>Time:  9:00 a.m. |

## DEFENDANT NATIONAL FOOTBALL LEAGUE'S MOTION FOR RECONSIDERATION OF ORDER DENYING REQUEST FOR DISCOVERY OF PLAINTIFF'S MEDICAL RECORDS

## TABLE OF CONTENTS

Table Of Authorities................................................................................................ii

Introduction ........................................................................................................... 1

Standard ................................................................................................................. 1

Procedural History of Request for Medical Records .............................................. 2

Plaintiff's Deposition Testimony and Other Discovery........................................... 4

Plaintiff's Trial Testimony Concerning Her Improved Condition........................... 9

Argument .............................................................................................................. 11

    Reconsideration is Appropriate................................................................. 12

    Limited Production of Medical Records is Appropriate.............................. 14

Conclusion ........................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Canoe Ass'n v. Murphy Farms, Inc.*,
   326 F.3d 505 (4th Cir. 2003)................................................................ 11

*Balla v. Idaho State Bd. of Corr.*,
   869 F.2d 461 (9th Cir. 1989)........................................................... 2, 11

*Donaldson v. Liberty Mut. Ins. Co.*,
   947 F. Supp. 429 (D. Haw. 1996) ...................................................... 11

*Hawaii Stevedores, Inc. v. HT & T Co.*,
   363 F. Supp.2d 1253 (D. Haw. 2005) ........................................... 11, 12

*Na Mamo O 'Aha 'Ino v. Galiher*,
   60 F. Supp.2d 1058 (D. Haw. 1999) ............................................ 11, 12

**Statutes**

H.R.S. § 489-3 ................................................................................ 12, 14

**Other Authorities**

Fed.R.Civ.P. 26(b)(1) ................................................................. 2, 12, 14

Fed.R.Civ.P. 37(a) .............................................................................. 14

Fed.R.Civ.P. 54(b) .......................................................................... 2, 11

LR 60.1 ............................................................................................ 1, 12

## Introduction

Defendant National Football League ("NFL"), by and through its undersigned counsel, hereby respectfully requests that the Court reconsider its order denying Defendant NFL's request for discovery of Plaintiff's medical records.  Specifically, Defendants seek production limited to medical records from December 2012 and January 2013, based on surprise testimony from Plaintiff during the first trial in this case.

Plaintiff now claims the ability to control and drastically improve her medical condition in the span of a few short days, in an attempt to undermine earlier statements she made denying her ability to negotiate safely the stairs at Aloha Stadium.  Defendant NFL previously requested Plaintiff's medical records, but that request was denied.  Accordingly, Defendant NFL was not able to corroborate or cross examine Plaintiff's unsubstantiated and self-serving claims during the first trial and will not be able to do so in the second trial without further limited discovery.

## Standard

According to the Local Rules of Practice for the United States District Court for the District of Hawaii, "[m]otions for reconsideration of interlocutory orders may be brought only upon the following grounds:  (a)  Discovery of new material facts not previously available; (b)  Intervening change in law;  (c)  Manifest error

of law or fact." LR 60.1.   Similarly, the Ninth Circuit has found explicit power to modify interlocutory orders before entering a final judgment through Federal Rule of Civil Procedure 54(b).  *See, e.g.*, *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989).

In evaluating a production request, "the [relevant] scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense -- including the existence, description, nature, custody, condition, and location of any documents. . . ."  Fed.R.Civ.P. 26(b)(1).  Further, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  *Id.*

The Court has specifically asked Defendant NFL to show good cause for further discovery.  Status Conference, Dkt. No. 381.  Moreover, the Court has communicated to Defendant NFL that it must show that Plaintiff did not give fair warning of her new evidence and that Defendant NFL therefore did not have reasonable opportunity to question Plaintiff during discovery or at trial.  *Id.*

**Procedural History of Request for Medical Records**

Defendant NFL previously sought medical records concerning Plaintiff's alleged disabilities.  *See* D. NFL's Third Set of Document Requests to P. Deb Ritchie.  Plaintiff failed to respond to the request in a timely manner and then eventually objected to the request as "[o]verly broad, cumulative, and not

reasonably calculated to lead to admissible evidence." *See* P.'s Response to NFL's Third Request for Documents.  The only documentation that Plaintiff provided in response was an incomplete Air Canada form with minimal information about Plaintiff's medical history and physical capabilities.[1]

On December 4, 2014, counsel for Defendant NFL sent an e-mail to Plaintiff's counsel explaining that, though Defendant NFL did not dispute that Plaintiff is an individual with a disability, "[w]hat we dispute is that in 2013 her medical condition made it safe for her to descend to, and evacuate from the fixed seats." (attached as Exhibit B).  Counsel further explained in the same email, "We need the medical records to respond to your claim that it was safe for Ms. Ritchie and other fans for her to descend to, and evacuate from the fixed seats."

After continued attempts to reach an understanding with Plaintiff and her counsel, Defendant NFL sent a letter to Judge Kurren on December 11, 2014, requesting Plaintiff's medical records. (attached as Exhibit C).  Plaintiff sent a letter brief to the Court in response. (attached as Exhibit D).  The Court denied Defendant NFL's request for discovery during a discovery conference held by

---

[1]    Plaintiff provided a four-page document entitled: "Air Canada:  Fitness for Air Travel -- Medical Information." (attached as Exhibit A).  The labeling in the bottom right-hand corner of the page indicates that there were six pages in total, but Plaintiff has only provided pages two, three, four, and six.  Defendants have since orally notified Plaintiff of this deficiency.  The form also includes a brief section describing illness, with only one line available for diagnosis, treatment, and present symptoms and severity, respectively.

Judge Kurren on December 30, 2014.  Dkt. No. 241.  After a first trial in this case,

during a Status Conference held on April 9, 2015, the Court granted Defendant

NFL's request to provide further briefing on this issue.  Dkt. No. 381.

### Plaintiff's Deposition Testimony and Other Discovery

In questioning Plaintiff during her deposition and in requests for discovery

to Plaintiff, Defendants sought information concerning whether Plaintiff's medical

condition allowed her to descend and ascend the Aloha Stadium stairs safely.

Specifically, Defendants wanted to understand how Plaintiff could claim that she

was not able to descend the stairs under "any circumstances" on Wednesday,

January 23, 2013, but then assert that she told Stadium employees on Friday,

January 25 that she could descend the stairs.  Defendants sought evidence to

corroborate Plaintiff's claim that her medical condition actually improved to the

extent that she claimed during this time period.

During Plaintiff's deposition (transcripts are attached as Exhibits E and F),

counsel for Defendant NFL asked Plaintiff whether it was true that on Wednesday,

January 23, 2013,  Plaintiff wrote in an email that "the front row is down a full

flight of steep stairs at Aloha Stadium, which I cannot do under any

circumstances."  Ritchie Depo. at 164:19-22.  Plaintiff responded that this was an

accurate statement, but it was true only at the moment that she wrote that email.

*Id*. at 164:23-25.  Counsel then asked Plaintiff if her condition changed after

sending this email on Wednesday, and Plaintiff responded that it had. *Id.* at 165:12-13. Counsel inquired into whether Plaintiff's condition varied daily and she responded, "Some days it's much worse than others." *Id.* at 165:14-15. Plaintiff later explained that a few days later following her January 23 email she had "improved physically" and that she had "lengthy discussions and had figured out a way" to descend the stairs. *Id.* at 166:8-13.

Counsel continued to question why Plaintiff did not provide more information about the variability of her condition to NFL employees, and Plaintiff claimed that Defendant NFL was well aware of her changing condition. *Id.* at 166:24-167:4. Yet, Plaintiff still failed to explain how and why her condition changed dramatically over the course of a few days. When asked if it were true that her emails did not explain that her condition might change, Plaintiff evaded the question and stated, unresponsively, "At that moment." *Id.* at 168:23-25. When asked again, Plaintiff claimed that she did explain that her condition might change "[i]n the phone calls." *Id.* at 169:1-4. Counsel tried to inquire into exactly what Plaintiff communicated to Stadium employees through phone calls, asking, "After this e-mail that you sent on January 23rd, you told the stadium that you were able to walk down those steps?" and Plaintiff answered, "No, I did not use those words." *Id.* at 170:21-24. Plaintiff did not add any more detail about what exactly she had told the Stadium about her condition and its variability.

Counsel later inquired whether Plaintiff thought Defendant NFL would have
been concerned about the condition she had communicated in writing, and whether
it was therefore appropriate to reserve wheelchair seats for Plaintiff. *Id.* at 185:9-
18. Plaintiff responded that she did not think that the NFL was being "nice" when
it reserved the seats, again, avoiding an opportunity to explain more about the
purported alteration in her condition. *Id.* at 185:19-186:5.

Counsel asked Plaintiff what information she provided to the Stadium
Authority's Event Manager, Stephen Lee, in phone calls on Friday January 25,
specifically whether she told Mr. Lee that could walk down the stairs in her
condition. Plaintiff responded that when she had written to the NFL on
Wednesday that she could not descend the stairs, she had not slept in forty hours
and she was determined to figure out a back-up "Plan B" to the field pass option.
*Id.* at 248:5-16. Again, when Counsel clarified, "Did you tell Steven (sic) [Lee]
that you were unable to walk down the steps?" Plaintiff responded, "I can't walk.
But I didn't say I couldn't get down the steps. I said I would be able to figure out a
way to get down the steps." *Id.* at 248:7-22. Also, based on her deposition
testimony and her trial testimony, the "way" that Plaintiff "figure[d] out" how to
descend the stadium steps was to scoot down more than 50 steps "on her butt." *Id.*
at 262:2-5; Tr. at 4-197 ¶24-25; 4-198 ¶1-3. This ostensible "solution" does not

connote any improvement in Plaintiff's ability to walk down the Stadium steps, and it confirms her inability to go back up those steps.

In ignoring questions about the specifics of her condition and what she volunteered to Stadium employees in the days leading up to the 2013 Pro Bowl, Plaintiff did not include any explanation of affirmative actions she took to improve her condition. At no point in her deposition did Plaintiff claim that she had control over the variability of her condition or that she knew of ways to improve her condition over a short period of time.

Additionally, the contemporaneous emails sent during this time period, between the first email where Plaintiff disclaimed any ability to descend the stairs and the claims that her condition had changed, contain no claims of Plaintiff's control over her health or her accomplishment of any sudden improvement in her mobility capabilities. First, Plaintiff emailed Terry Wooten, an NFL Events Department employee, on Wednesday, January 23, 2013. Plaintiff wrote, "[F]inally made it to Hawaii after a 40 hour journey . . . [J]ust realized I have a problem for this Sunday's ProBowl Game." (attached as Exhibit G). Plaintiff stated that though she did not want to give up her front row seat, she was now in a wheelchair, and "the front row is down a full flight of steep stairs at the Aloha stadium which I cannot do under any circumstances." Plaintiff added, "I cannot

7

get down the flight of stairs at all." At no point did Plaintiff mention that she had the ability to upgrade her mobility capabilities before the 2013 Pro Bowl.

The only other email correspondence that Defendant NFL has from Plaintiff following this Wednesday, January 23 email prior to her arrival at Aloha Stadium on Sunday, January 27, is another email from Plaintiff to Terry Wooten on Friday, January 25. (attached as Exhibit H). Plaintiff explained the importance of the event to her family and that she did not want to sit in the wheelchair-accessible seating area. Nowhere in this email (or any subsequent other communication) does she mention any steps she had taken since her January 23 email to recover physically or that she had substantially improved her capacity for mobility during the intervening two days.

Finally, although Plaintiff claims she spoke to Mr. Lee and the Stadium Authority's Assistant Events Manager, Ryan Andrews, about her ability to descend the Stadium stairs in the course of phone calls on Friday, January 25, Plaintiff did not mention her ability to control her condition to either Mr. Lee or Mr. Andrews. Tr. at 3-16 ¶1-13 (Mr. Lee stated that Plaintiff never told him that her condition had changed); Tr. at 6-113 ¶1-6 (Mr. Andrews stated that during their phone call, Plaintiff told him that she could not walk). Plaintiff also believes she may have spoken to a third Stadium employee, Andrew Chang, during this time period, but

Mr. Chang testified that he has never met or spoken to Plaintiff.  Tr. at 2-63 ¶25;

2-64 ¶1.

### Plaintiff's Trial Testimony Concerning Her Improved Condition

During trial, Plaintiff was again asked many of the same questions

previously asked during her deposition, specifically how was it that her condition

could change so dramatically from January 23 to January 25, 2013.  Plaintiff's

responses not only went well beyond the scope of her deposition answers, but

included detailed, new claims about not only her variable condition, which could

improve or worsen, but also her ability to achieve functional mobility and to

recover radically and rapidly.

For example, on the stand, Plaintiff began by reiterating that her condition

was variable, but now added that "if I had been in that condition at home in

Toronto in the wintertime, it would have taken probably up to three weeks to

recover back to my functionable level again."  Tr. at 3-186 ¶9-20.  Next, Plaintiff

explained that her condition was not only variable, but she in fact had methods to

improve her condition:  "[I]n Hawaii here, I was -- I had access to the hot tubs, the

swimming pools.  And the excitement of being here with the Pro Bowl . . . So, all

of the adrenaline and endorphins and the warm weather makes a tremendous

difference to my mobility and to reducing the inflammation and the other issues on

my spinal cord.  So *I was able to get myself back . . .*"  Tr. at 3-186 ¶21-25; 3-187

¶1-4.  (emphasis added).

Later on in her testimony, Plaintiff elaborated upon this new evidence:

"[T]he way I felt at that moment would usually take me a couple of weeks to

recover.  But at home in Toronto I don't have access to all of the things that help

me to get myself back in order.  And I had access to all of those things here."  Tr.

at 4-118 ¶25; 4-119 ¶1-7.  Plaintiff added, "I had extensive discussions with the

stadium people, and in those extensive discussions I continuously told them that I

have been better now.  I've had a chance to sleep, I've had a chance to get into the

-- I spent like three to six hours in the jacuzzi, in the pools, in everything.  So I am

-- and the adrenaline, and adrenaline -- I don't know if you people understand an

endorphin, it's stronger than any, quote, antiinflammatory or medication that you

can take.  And so the inflammation had come down."  Tr. at 4-119 ¶17-25; 4-120

¶1.[2]

Plaintiff then spoke expansively about the inflammation, specifically the

issues she began to face in December 2012,  "I have things pushing on the spinal

cord.  Inflammation can make it worse or better.  So some days when I'm toast, the

inflammation makes it worse, I can't move.  Other days I can."  Tr. at 5-15 ¶19-23.

---

[2]     Here, Defendant State of Hawai'i objected because Plaintiff's testimony
concerned her medical history.  Tr. at 4-120 ¶2-3.

Despite Plaintiff's uncorroborated claims that she conveyed all of this information to Stadium employees via telephone, this testimony was entirely unanticipated and surprising to both Defendant NFL and Defendant State of Hawai'i.

## Argument

The Ninth Circuit has found explicit authority to reconsider interlocutory orders within Federal Rule of Civil Procedure 54(b) and has established that "[c]ourts have inherent power to modify their interlocutory orders before entering a final judgment." *See, e.g., Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 465 (9th Cir. 1989) (citing Fed.R.Civ.P. 54(b) ("[A]ny order which is not certified under Rule 54(b) and which adjudicates fewer than all the claims as to all the parties 'is subject to revision at any time before the entry of [final] judgment.'")); *see also American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003) ("Motions for reconsideration of interlocutory orders are not subject to the same strict standards applicable to motions for reconsideration of final judgments.")

Additionally, "[t]he law is well settled in the Ninth Circuit that a successful motion for reconsideration must accomplish two goals." *See, e.g., Donaldson v. Liberty Mut. Ins. Co.*, 947 F. Supp. 429, 430 (D. Haw. 1996). First, the motion must establish a reason "why the court should reconsider its prior decision." *See, e.g., Na Mamo O 'Aha 'Ino v. Galiher*, 60 F. Supp.2d 1058, 1059 (D. Haw. 1999).

11

Second, the motion must also "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Hawaii Stevedores, Inc. v. HT & T Co.*, 363 F. Supp.2d 1253, 1269 (D. Haw. 2005).

The District of Hawaii has adopted local rules to address the standard for reconsideration of interlocutory orders. LR 60.1. The Local Rule establishes three grounds justifying reconsideration: "(a) Discovery of new material facts not previously available; (b) Intervening change in law; (c) Manifest error of law or fact. *Id.*

First, Defendant NFL argues that "the court should reconsider its prior decision" because of "[d]iscovery of new material facts not previously available." *See Galiher*, 60 F. Supp.2d at 1059; LR 60.1. Second, Defendant NFL believes that the new facts claimed by Plaintiff are of a "strongly convincing nature" to cause the Court to reverse its prior discovery order and allow limited discovery because the new trial evidence is directly relevant to Plaintiff's claim of discrimination under H.R.S. § 489-3. *See* Fed.R.Civ.P. 26(b)(1); *Hawaii Stevedores, Inc.*, 363 F. Supp.2d at 1269.

## *Reconsideration is Appropriate*

Reconsideration of the Court's order denying discovery of medical records is appropriate because Plaintiff presented new evidence at trial that was not previously available to Defendants. This new evidence of Plaintiff's alleged

control over her medical condition allowed Plaintiff to testify to an entirely new

theory of her case while on the stand without any notice to Defendants.  Under

Plaintiff's novel theory, her medical condition was not merely variable, but in fact

controllable, by Plaintiff herself, through self-treatment time spent in "hot tubs"

and  "swimming pools," and other relaxation methods entirely within her own

power.  *See, e.g.*, Tr. at 3-186 ¶21-22.

This distinction is crucial to proving the safety of Plaintiff's ability to

maneuver the Stadium stairs.  The discrepancy is fundamental because a condition

that is merely variable is also subject to potential change for the worse, not only

change for the better, meaning that Plaintiff could have again deteriorated between

Friday and Sunday, i.e., January 25 and 27, 2013.  *See, e.g.*, Ritchie Depo. at 165-

14-16 ("Some days [my condition] is much worse than others."); *Id.* at 300-1-2

("Well, my physical condition had . . . actually worsened over the summer.").  A

controllable condition is not subject to this same deficiency, and therefore Plaintiff

could bolster her argument that the Stadium knew that she could safely negotiate

the stairs and chose to ignore her claims for no apparent reason.

Without medical records to verify these claims of Plaintiff's manageable and

improvable condition, Defendants were not able to cross-examine and impeach

Plaintiff effectively at trial.  In contrast, Plaintiff had the opportunity at trial to

expand upon the theory of her recovery.  No longer was Plaintiff relying on the

variability of her disability to explain her dramatic recovery, but instead Plaintiff relied on her ability to *control* her medical condition, namely her ability to treat her condition and regain substantial functionality in a matter of a few days. *See e.g.,* Tr. at 4-119 ("I spent like three to six hours in the jacuzzi, in the pools, in everything). In doing so, Plaintiff was intending to reconcile the apparent contradiction of her original statement that she could not descend the stairs "under any circumstances." This initial declaration is central to Defendants' case because it is why Stadium employees first encouraged Plaintiff to sit in the wheelchair-accessible seating and why Defendants doubted Plaintiff's later claims that she could now find a safe way to her front row seat.

### Limited Production of Medical Records is Appropriate

The evidence of Plaintiff's ability to improve her medical condition rapidly is properly discoverable under the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense -- including the existence, description, nature, custody, condition, and location of any documents. . . ."). Additionally, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action" and a party. *Id.*; Fed.R.Civ.P. 37(a).

The medical records sought by Defendant NFL are directly relevant to Plaintiff's new claims that she was able to engineer her own rapid recovery and therefore safely descend the Stadium stairs.  Plaintiff's ability to descend the stairs is directly relevant to two elements of the H.R.S. § 489-3 discrimination claim: whether Plaintiff proved, by a preponderance of the evidence, that Defendant National Football League's denial of meaningful access was on account of Plaintiff's disability and whether Defendant National Football League proved, by a preponderance of the evidence, that providing Plaintiff access to the seat she purchased at the 2013 Pro Bowl would have posed a direct threat to the health or safety of others.  *See* Special Verdict Form for Defendant National Football League.

The need to understand and dispute Plaintiff's ability to descend the stairs is one of several reasons that Defendant NFL originally requested Plaintiff's medical records.  In an email to Plaintiff's counsel, that was presented to Judge Kurren as part of Plaintiff's reply letter brief to Defendant NFL's request for production of medical records, counsel for Defendant NFL explained, "What we dispute is that in 2013 her medical condition made it safe for her to descend to, and evacuate from the fixed seats."  Though Defendant NFL's letter brief focused on the need for medical records to dispute damages, the need to dispute Plaintiff's safe descent was explicitly communicated in this email to Plaintiff's counsel, and this

15

requirement has become significantly more crucial to Defendants' case since Plaintiff testified at trial about her ability to ameliorate her condition in a matter of a few days.

The specific period requested by Defendants -- December 2012 and January 2013 -- is both very limited and likely to provide relevant information.[3]  Plaintiff claims that she was treated in a hospital in December 2012 and had become a complete quadriplegic from the neck down.  Tr. at 4-105 ¶ 19-23 ("But I ended up in the hospital unable to move from the chin down at all . . . That was December the 12th."); Email from Deb Ritchie to Terry Wooten, Dec. 14, 2012 (attached as Exhibit I) ("On Wednesday [December 12, 2012], I suddenly became a complete quadrapilegic (sic) from the neck down.").  Plaintiff has stated that this condition was entirely new to her.  Ritchie Depo. at 161:16-23 ("I was in a new situation . . . I was dealing with a lot of things . . . My health had changed in December . . . And it was new to me, the whole situation of being a person who can't walk.")

Accordingly, Plaintiff's control over this new condition and, specifically, her ability to improve the condition through use of warm water and weather to reduce inflammation, would likely have at least partially developed during this timeframe.

---

[3]     Although Defendant NFL is requesting a limited period of discovery at this time, it reserves its objections to the original denial (see Dkt. No. 241) of its request for production of Plaintiff's medical records, found in Defendant NFL's Third Set of Document Requests to Plaintiff Deb Ritchie.  Defendant NFL does not intend for this current request to be a waiver of its previous position.

Therefore, if any period of Plaintiff's medical history were able to demonstrate her rapid ability to improve her mobility capabilities, it would likely be this period in which she went from a hospitalized "complete quadriplegic" on December 12, 2012, to an "incomplete," "functional quadriplegic" who could purportedly manage going down more than 50 steep Stadium steps, by the time of her January 25, 2013 conversations. *See* Tr. at 3-29 ¶14, 25.

## Conclusion

Accordingly, Defendants respectfully request that the Court reconsider the order denying Defendant NFL's request for Plaintiff's medical records and that the Court compel production of Plaintiff's medical records from December 2012 and January 2013.

DATED:  Honolulu, Hawaii, April 16, 2015.

CADES SCHUTTE LLP

By        /s/ *Theodore D.C. Young*
            THEODORE D.C. YOUNG

SHEPPARD, MULLIN,
RICHTER & HAMPTON LLP
GREGORY F. HURLEY

COVINGTON & BURLING LLP
THOMAS S. WILLIAMSON, JR.

Attorneys for Defendant
NATIONAL FOOTBALL LEAGUE

ImanageDB:3085003.1